IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
DONNA KIRKPATRICK,            )
                              )
     Plaintiff,               )
                              )   CIVIL ACTION NO.
     v.                       )      1:14cv171-MHT
                              )          (WO)
GENEVA COUNTY BOARD OF        )
EDUCATION, et al.,            )
                              )
     Defendants.              )
```

OPINION

Plaintiff Donna Kirkpatrick brought this action against three defendants: the Geneva County Board of Education, former superintendent William David Snell, and current superintendent Becky Birdsong. Kirkpatrick asserts violations of her First Amendment rights to freedom of speech and association (as enforced through 42 U.S.C. § 1983) and violations of her rights under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a & 2000e, et seq.), and the Family and Medical Leave Act (FMLA) (29 U.S.C. § 2601, et seq.).  Subject-matter jurisdiction is proper under 28

U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  The case is now before this court on Birdsong's motion to dismiss in which she asserts the defense of 'qualified immunity.'  For the reasons that follow, the dismissal motion will be granted and Birdsong dismissed.

## I. LEGAL STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

545 (2007), "only enough facts to state a claim to relief that is plausible on its face."  Id. at 574.

## II. BACKGROUND

Kirkpatrick is a special education teacher and administrator employed by the Geneva County of Education.  In this lawsuit, she claims primarily that the county school board, along with former superintendent Snell and current superintendent Birdsong, retaliated against her in various ways for protected activity.  The following facts are drawn from the complaint and taken as true in considering Birdsong's motion to dismiss.

Kirkpatrick has been employed by the school board since 1994.  She has advanced degrees in special education and is a tenured teacher, having served as a special education teacher at Samson Elementary School for ten years.  She became principal of Samson in 2009; her contract for that position was for three years, beginning with the 2009-2010 school year.

In the fall of 2009, at the beginning of her term as principal, Kirkpatrick applied to the school board for the position of Special Education Coordinator. She was not selected; according to the complaint, a less qualified man was given the job. Kirkpatrick then filed a charge with the Equal Employment Opportunity Commission (EEOC).

Kirkpatrick contends that the board and Snell began to retaliate against her in 2010. Specifically, she says that they issued her an unwarranted reprimand letter in January and that in May they rejected her recommendations for teachers to hire. Principals' recommendations would normally receive deference.

In October 2010, another employee of the school board, Sonja Harrison, asked Kirkpatrick to testify on her behalf at an arbitration hearing regarding Harrison's EEOC charge. Kirkpatrick agreed and testified regarding her own allegations of gender discrimination against the board.

In January 2011, while on maternity leave, Kirkpatrick was reprimanded for visiting the school, although she is unaware of any policy prohibiting visits. In February 2011, while still on maternity leave, she was not consulted about a reprimand issued to one of the teachers at her school. Also in 2011 Snell criticized Kirkpatrick's determination about a student award. He claimed to have received complaints about Kirkpatrick's performance, but, on the recommendation of a school-board member, would not let Kirkpatrick see the complaints. The school board again departed from the practice of deferring to principal recommendations in hiring staff for her school on several occasions. Among the candidates recommended by Kirkpatrick but not hired was Harrison, on whose behalf Kirkpatrick had testified. The board also permitted the transfer of a teacher working under Kirkpatrick without following the normal protocol of notifying the principal. In January 2012, Snell accused Kirkpatrick

of violating a federal privacy statute, but later admitted that she had not done so.

In February 2012, Kirkpatrick took time off to care for her sick father. Kirkpatrick's father died on March 10 and was buried March 13. On March 14, Snell called Kirkpatrick to ask when she would return to work. Kirkpatrick said she planned to return the following week, but Snell said that was unacceptable and told her to return the following day, March 15, 2012.

On March 15, Snell presented Kirkpatrick with a performance review that Kirkpatrick contends was unjustifiably negative, allegedly as pretext for a decision not to renew Kirkpatrick's contract as principal. On March 19, Snell and counsel for the school board informed Kirkpatrick that Snell had recommended her contract not be renewed. According to the complaint, this was the earliest opportunity the board had to decline to renew the contract following Kirkpatrick's EEOC charge and testimony.

Kirkpatrick also cites Snell for chastising her for taking a legitimate personal day and baselessly accusing her of acting unprofessionally, as well as his continued refusal to honor her hiring recommendations. Further, she made 11 requests for transfers to different positions within the district between June 2012 and August 2013, and the defendants denied them all. Snell and Birdsong called her about the first request, and asked if she was interested in the position and if she would agree not to contest the decision to non-renew her contract as principal. Kirkpatrick said she could not discuss the latter issue, and her request for a transfer was ultimately denied.

Kirkpatrick filed a second EEOC charge on November 6, 2013. She filed the original complaint in this lawsuit on March 14, 2014. Kirkpatrick then received her right-to-sue letter in August 2014 and filed an amended complaint on November 20, 2014, with the letter

attached. In response, Birdsong filed the motion to dismiss that is now before the court.

### III. DISCUSSION

Kirkpatrick claims that all three defendants violated her First Amendment right to freedom of association. She also claims that the county school board alone violated her First Amendment right to freedom of speech[1] and her rights under the FMLA and Title VII.[2] With her motion to dismiss, Birdsong argues

---

1. Kirkpatrick initially sued Snell and Birdsong on her free-speech claim as well, but stipulated to the dismissal of that claim against them. See Pf. Supp. Br. (doc. no. 35); Order (doc. no. 41).

2. Kirkpatrick also sued Birdsong in her official capacity on these claims against the school board. "The Supreme Court has said that official capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.'" Hobbs v. Roberts, 999 F.2d 1526, 1530 (11th Cir. 1993) (quoting Kentucky v. Graham, 473 U.S. 159, 167-68 (1985)). Because Kirkpatrick has apparently conceded this point, the court views her free-speech, FMLA, and Title VII claims to be against only the school board.
(continued...)

that the only claim Kirkpatrick has against her--that Birdsong violated Kirkpatrick's right to freedom of association--should be dismissed based on the defense of qualified immunity.

### A.

The court will first discuss the nature of the qualified-immunity defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In deciding

---

It also appeared that Kirkpatrick made a claim arising out of the school board's decision not to hire her as Special Education Coordinator in 2009. Kirkpatrick has indicated that she is making no such claim, but only pleaded facts related to that decision as background for her retaliation claim.

whether an official is entitled to this immunity, courts analyze (1) whether the plaintiff has shown an actual violation of her right and (2), if so, whether the right at issue was clearly established at the time it was violated. Pearson, 555 U.S. at 232.

"Qualified immunity protects government officials, in their individual capacities, from suit unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002). As this court has explained:

> "[The requirement that a right be clearly established] is fundamentally a question of fair notice: If the law does not make the officer aware that his 'conduct would be clearly unlawful,' then he is protected by qualified immunity, Saucier v. Katz, 533 U.S. 194, 202 (2001); however, if the plaintiff can show that 'a materially similar case has already

> been decided' in his favor, then fair notice exists and qualified immunity does not attach. Mercado v. City of Orlando, 407 F.3d 1152. 1159 (11th Cir. 2005)."

Schultz v. City of Brundidge, 2012 WL 705358 at *5 (M.D. Ala. 2012) (Thompson, J.); see also Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (discussing ways to demonstrate that a right was clearly established).

Kirkpatrick contends that a qualified-immunity analysis is premature, but she is incorrect. Qualified immunity is routinely raised and addressed at the motion-to-dismiss stage, see, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009), and its "basic thrust ... is to free officials from the concerns of litigation, including avoidance of disruptive discovery." Id. at 685 (internal quotation marks omitted). Thus, the doctrine is properly raised at this stage.

B.

The court will now determine whether the qualified-immunity defense defeats Kirkpatrick's claim against Birdsong

Public employees' claims based on freedom of association and freedom of speech are analyzed almost identically. To set forth a free-speech claim, "a public employee must show: (1) she was speaking as a citizen on a matter of public concern; (2) her interests as a citizen outweighed the interests of the State as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action." Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007); see also Lane v. Franks, 134 S. Ct. 2369, 2378 (2014). In analyzing a public employee's freedom-of-association claim, the Eleventh Circuit Court of Appeals applies the same analysis (substituting association for speech), with one exception: the plaintiff in a freedom-of-association case need not show that the associative activity related to a matter of public concern. See Cook v.

Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1320 (11th Cir. 2005); D'Angelo v. Sch. Bd. of Polk Cnty., Fla., 497 F.3d 1203, 1212 (11th Cir. 2007).

Kirkpatrick contends that Birdsong violated her right to freedom of association by retaliating against her for her association with--in the form of her testimony on behalf of--Sonja Harrison. In 2014 in Lane v. Franks, the Supreme Court announced that: "Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment." 134 S. Ct. at 2378.

Birdsong argues that, despite the 2014 Lane decision, she is entitled to qualified immunity because, at the time she acted in 2012 and 2013, the law did not clearly establish that she was violating Kirkpatrick's free-association rights. The court agrees.

At the time Birdsong acted, it was, as a general matter, "clearly established that public employees have a First Amendment right to engage in associative activity without retaliation." Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1320 (11th Cir. 2005) (citing Hatcher v. Board of Pub. Educ. & Orphanage for Bibb County, 809 F.2d 1546, 1558 (11th Cir. 1987)). Kirkpatrick relies on Hatcher, a 1987 case, to show that her claim was clearly established in 2012 and 2013. In Hatcher, a former school principal claimed that the school board denied her a new job "because she brought her minister and a school board member to her meeting with the assistant superintendent." Hatcher, 809 F.2d at 1557. The court concluded that "this constitutes constitutionally protected associational activity," id., reversed the district court's grant of summary judgment for the board, and remanded for further findings. Id. at 1559.

However, the requirements for establishing a freedom-of-association claim have evolved since

14

Hatcher. Relying on the distinction drawn in Garcetti v. Ceballos, 547 U.S. 410 (2006), a public-employee free-speech case, the Eleventh Circuit held in 2007 that a public employee bringing a free-association claim must show that her associational activity was undertaken as a "citizen" rather than as an employee. D'Angelo, 497 F.3d at 1212. And the Eleventh Circuit's cases interpreting that distinction before the 2014 Lane decision were less than clear.

Abdur-Rahman v. Walker, 567 F.3d 1278, 1283 (11th Cir. 2009), abrogated in part by Lane, 134 S. Ct. at 2376, a free-speech case, turned on the issue of whether the public-employee plaintiffs spoke as citizens or employees. In holding that plaintiffs' speech was unprotected, the Eleventh Circuit focused on language from Garcetti indicating that "speech that owes its existence to a public employee's professional responsibilities" constitutes unprotected speech as an employee. Id. (internal quotation marks omitted). In her dissent, Judge Barkett took issue with this reading

15

of Garcetti, pointing out that, properly understood, that case indicated that "an employer commissions or creates speech when an employee speaks pursuant to official duties, not when that employee speaks outside of those commissioned duties." Id. at 1289 (Barkett, J., dissenting). Indeed, Judge Barkett's reading of Garcetti was vindicated in 2014 in Lane. See Lane, 134 S. Ct. at 2379 ("The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."); id. at 2383 (Thomas, J., concurring) ("The petitioner in this case did not speak 'pursuant to' his ordinary job duties because his responsibilities did not include testifying in court proceedings, and no party has suggested that he was subpoenaed as a representative of his employer.") (citations omitted).

Nonetheless, at the time of Birdsong's conduct in this case, Abdur-Rahman was still good law, and the line between engaging in associative activity as a

citizen rather than as an employee remained ill-defined in the Eleventh Circuit. Arguably, in light of Abdur-Rahman, Birdsong reasonably could have seen Kirkpatrick's testimony for her colleague at the EEOC hearing about events that occurred at work as constituting associative activity "that owes its existence to a public employee's professional responsibilities," Abdur-Rahman, 567 F.3d at 1283, and therefore was undertaken not as a citizen, but as an employee. Because the distinction between employee and citizen at issue in Abdur-Rahman applies as well to a freedom-of-association claim, see D'Angelo, 497 F.3d at 1212, and because that doctrine was developed after the decision in Hatcher on which Kirkpatrick relies, the court concludes that the "landscape of Eleventh Circuit precedent," Lane, 134 S. Ct. at 2382, failed to give fair notice that the conduct alleged in this case would violate Kirkpatrick's rights. Thus, the court will grant qualified immunity to Birdsong on this claim.

\*\*\*

For the foregoing reasons, an appropriate judgment will be entered granting Birdsong's dismissal motion and dismissing her.

DONE, this the 6th day of October, 2015.

                    /s/ Myron H. Thompson
                    **UNITED STATES DISTRICT JUDGE**